**John B. PRESTON, Plaintiff-Appellee,**

**v.**

**John L. SMITH, et al., Defendants,**

**David Bland and Donald Bordenkircher, Defendants-Appellants.**

**No. 83–5116.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 29, 1983.

Decided Dec. 19, 1984.

Edwin A. Logan (argued), Logan & Gaines, Frankfort, Ky., for defendants-appellants.

John Brenton Preston, pro se.

Robert W. Carran (argued), Covington, Ky., for plaintiff-appellee.

Before EDWARDS and KRUPANSKY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.*

* Honorable Thomas E. Fairchild, Senior Circuit Judge, U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

**GEORGE CLIFTON EDWARDS, Jr.,** Circuit Judge.

This is another appeal arising from Judge Edward Johnstone's 1978 problems at the Eddyville Prison. *See Kendrick v. Bland,* 740 F.2d 432 (6th Cir.1984). In it appellants Bland and Bordenkircher, respectively, the Director of the Kentucky Department of Corrections and the Warden of the Kentucky State Penitentiary in Eddyville, appeal from a general verdict returned against them jointly in favor of plaintiff John B. Preston in the sum of $500 monetary damages and of $5,000 punitive damages.

Preston's individual 42 U.S.C. § 1983 suit against these two high-ranking officials of the Kentucky Corrections System resulted from a prisoner work stoppage of October 30, 1978, which Warden Bordenkircher responded to by a prisonwide lock-in. A Screening Committee consisting of prison officers and officials subsequently recommended that disciplinary action be taken against eight inmate legal aide advisors, including Preston. The committee concluded that the legal aides were "the bonding element against various factions of the inmate population to band together in a demonstration for the purpose of demanding change." The committee held that the legal aides had instigated the uprising by promising legal assistance if the inmates demanded changes at the prison. The facts indicate, as the Screening Committee reported, that the legal aides stood on the veranda of the legal office and kept notes of the situation in the yard. It is apparently undisputed that Preston was never in the yard or near any demonstration which took place.

On October 31, the day after the demonstration and lock-in, Preston was transferred to segregation/solitary confinement. He was told his personal property in his cell would be taken care of by prison guards. He was never told why he was being moved to segregation. He testified that the cell he was confined in was empty, except for a toilet fixture and a double bed-sized mattress, which had the springs

removed from it. He was not allowed any personal possessions. Preston testified before Judge Johnstone: "I asked Captain Copeland why I was over there, and why I was placed in a cell that had no bed and no springs, no mattress, and no sheets." He said, "The Warden doesn't want you to have a goddamn thing, and I am following his orders."

Preston was continuously confined between October 31 and November 8 when he was summoned before the Disciplinary Adjustment Committee, without prior notice. He called an officer (Phelps) as a witness and was acquitted of the disciplinary charges by the Committee. He asserts that he had requested representation but that request had been denied.

Preston also testified before the jury that when he was released from segregation/solitary confinement, all of his personal property was missing and has never been returned.

■ Our inspection of this record does not disclose any evidence of acts or proof of ratification of acts which warrant an award of damages as to Defendant Bland. The judgment of the District Court as to Bland is therefore vacated and the case is remanded to the District Court for dismissal of the complaint as to him.

■ The record is, however, different as to Appellant Bordenkircher. He clearly was in charge of the prison staff and the jury had evidence before it from which it could have concluded that Defendant Bordenkircher was responsible for the deprivations complained about by Preston and found by the jury.

What we have said above might have required our affirmance of the jury award as to Bordenkircher absent the recent United States Supreme Court decision in *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In the *Hudson* case, however, the Supreme Court held that deprivation or destruction of a state prison inmate's property cannot be considered by the federal courts if the state

law in question provides an adequate post deprivation remedy for such damages.

The jury in this case was not instructed to separate Preston's damages between those resulting from his claim of unconstitutional segregation/solitary confinement and his claim of illegal deprivation of property.

The judgment of the District Court is vacated and the case is remanded for retrial as to the segregation/solitary confinement issue. Any federal claim as to loss of property is barred by *Hudson v. Palmer, supra,* since Kentucky does provide a state court remedy for the damages in question. *See Spillman v. Beauchamp,* 362 S.W.2d 33 (Ky.1962). *See also* Kentucky Revised Statutes 44.070.

Of concern at retrial will also be two other Supreme Court decisions, *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Both of these cases were decided in the Supreme Court after our instant case was tried and decided in the District Court. Both, of course, will be before the District Court at retrial of this case.

We do not agree with the dissent that either (or both) of these cases should be read as summarily disposing of other issues in this appeal. In remanding *Harlow v. Fitzgerald, supra,* Justice Powell said:

In this case petitioners have asked us to hold that the respondent's pretrial showings were insufficient to survive their motion for summary judgment. We think it appropriate, however, to remand the case to the District Court for its reconsideration of this issue in light of this opinion. The trial court is more familiar with the record so far developed and also is better situated to make any such further findings as may be necessary.

457 U.S. at 819–820, 102 S.Ct. at 2739–2740.

This case is remanded to the District Court for similar consideration and/or retrial of the remaining issue.

KRUPANSKY, Circuit Judge, concurring in part and dissenting in part.

I agree that the evidence does not support the verdict against defendant Bland and that plaintiff's deprivation of property claim does not constitute a constitutional right pursuant to *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). However, I also believe that defendant Bordenkircher was entitled to a partial directed verdict based on qualified immunity and that the record fails to support an award of punitive damages. Therefore, I respectfully dissent.

At this juncture, a short recitation of relevant procedural facts is in order. After denying defendants' motion for a directed verdict, the trial judge submitted plaintiff's § 1983 cause of action to the jury on four separate allegations:

(1) that he had been denied due process prior to being placed in administrative segregation;

(2) that the conditions in his segregated cell—no hot water, bed or mattress—constituted cruel and unusual punishment;

(3) that plaintiff was singled out for punishment because of his duties as a legal aide, thereby infringing on the constitutional right of access to the courts;[1] and

(4) that personal property—a watch, radio, stereo and songs—were taken from him without due process of law.

The jury returned a general verdict for plaintiff against Bordenkircher and Bland for $500 compensatory and $5,000 punitive damages. Defendants' post-verdict motions for jnov and new trial were denied.

On appeal, the majority of this panel has merely vacated the judgment against Bland due to insufficient evidence, deleted plaintiff's property claim in accordance with *Hudson, supra,* and remanded the case for a new trial. In so doing, however, the majority has completely disregarded the

---

1. The majority has not addressed this issue in its opinion.

qualified immunity doctrine which, when applied to the facts of this case, requires a verdict for defendant Bordenkircher in at least two of plaintiff's remaining claims.

The Supreme Court has recently changed the law of immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court reviewed its previous decisions on immunity and noted that the test for immunity involved both an objective test—whether the official knew or reasonably should have known that his conduct would violate constitutional rights—and a subjective test—whether the official took the action with malicious intention to cause a deprivation of rights.

The Supreme Court concluded that the subjective element of the test was unworkable because it required a factual determination often necessitating a full trial. Desiring to preclude this interruption with government, the Court deleted the subjective element of the test and held that:

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

In *Harlow v. Fitzgerald,* 102 S.Ct. at 2738, the Court proceeded to elaborate on the operation of this new standard:

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is

resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

102 S.Ct. at 2739 (footnote omitted).

Although the *Harlow* case involved federal officials, this Court has held that the same standard applies to state officials. *Wolfel v. Sandborn,* 691 F.2d 270 (6th Cir. 1982), *cert. denied,* 459 U.S. 1115, 103 S.Ct. 751, 74 L.Ed.2d 969 (1983). *See also, Harlow v. Fitzgerald,* 102 S.Ct. at 2738, n. 30.

The essential inquiry with respect to analyzing the defendant's immunity is twofold: (1) what is the applicable law, and (2) was that law well settled at the time of the occurrences. These inquiries must be answered as to each cause of action.

One of plaintiff's causes of action remanded by the majority is an assertion that he was placed in administrative segregation without receiving a due process hearing. It has been settled since 1974 that disciplinary proceedings that entail such punishments as revocation of good time or solitary confinement can implicate the due process clause. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff,* the Supreme Court held that before prisoners in Nebraska could be deprived of good time credits they were entitled to notice and a hearing including the right to call witnesses.

However, in a recent Supreme Court case, the Court faced a situation very similar to the case at bar. In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), a prisoner was removed from his cell after a riot and placed in administrative segregation. One day later the prisoner was given a misconduct report charging him with prison violations. Five days later

a Hearing Committee reviewed the charges against the prisoner. Although the prisoner did not appear at this time, he was permitted to submit a brief statement. The Hearing Committee made no findings as to guilt but ordered that the prisoner's confinement to administrative segregation continue. Approximately six weeks later, a Hearing Committee heard evidence and found the prisoner guilty of one misconduct charge and ordered that he be confined to disciplinary confinement for six months.

The prisoner brought suit contending that he had been placed in administrative segregation without the procedures mandated by *Wolff.* The district court granted the prison officials' summary judgment motion. On appeal, however, the Third Circuit remanded to determine whether the standards of *Wolff* had been met.

The Supreme Court reversed. Although the Court agreed that certain Pennsylvania statutes and regulations granted the prisoner a liberty interest in remaining in the general prison population, the Court held that the prisoner had received all the process that was due. The Court stated that, in placing a prisoner in administrative segregation, either because he represents a security threat or to investigate misconduct charges, the prison officials need merely provide the inmate with "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." 103 S.Ct. at 874. The Court stated that this "proceeding must occur within a reasonable time *following* an inmate's transfer, taking into account the relatively insubstantial private interest at stake and the traditionally broad discretion of prison officials." *Id.* at n. 8 (emphasis added).

Finally, the Court concluded that the prisoner in *Helms*, who had received notice of the charges one day after the transfer and who had submitted his written response to the committee convening five days after transfer, had received due process.

In the instant case, the prisoner received his notice and opportunity to be heard—in fact a full hearing—eight days after transfer. Assuming, *arguendo*, that the failure to provide more prompt notice rose to the level of constitutional deprivation, the *Hewitt* decision illustrates that the law applicable to administrative segregation was not well settled at the time of the incidents in issue. Hence, under *Harlow v. Fitzgerald*, Warden Bordenkircher was entitled to a directed verdict on plaintiff's due process claim based on qualified immunity.

As indicated, the plaintiff also based a cause of action on cruel and unusual punishment founded upon his charge that his segregation cell did not have a mattress or hot water. In *Rhodes v. Chapman*, 452 U.S. 337, 346–347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) the Supreme Court stated:

> No static "test" can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 596 (1958) (plurality opinion). The Court has held, however, that "Eighth Amendment judgments should neither be nor appear to be merely the subjective views" of judges. *Rummel v. Estelle*, 445 U.S. 263, 275 [100 S.Ct. 1133, 1139, 63 L.Ed.2d 382], (1980). To be sure, "the Constitution contemplates that in the end [a court's] own judgment will be brought to bear on the question of acceptability" of a given punishment. *Coker v. Georgia*, *supra*, 433 U.S. [584] at 579 [97 S.Ct. 2861 at 2868, 53 L.Ed.2d 982 (1977)], (plurality opinion); *Gregg v. Georgia, supra*, 428 U.S. at [153] 182 [96 S.Ct. 2909 at 2929, 49 L.Ed.2d 859 (1976)], (joint opinion). But such " 'judgment[s] should be informed by objective factors to the maximum possible extent.' " *Rummel v. Estelle, supra*, 445 U.S. at 274–275 [100 S.Ct. at 1139], quoting *Coker v. Georgia, supra* [433 U.S.] at 592 [97 S.Ct. at 2866],

(plurality opinion). For example, when the question was whether capital punishment for certain crimes violated contemporary values, the Court looked for "objective indicia" derived from history, the action of state legislature, and the sentencing by juries. *Gregg v. Georgia, supra,* 428 U.S. at 176–187 [96 S.Ct. at 2926–2931]; *Coker v. Georgia, supra,* 433 U.S. at 593–596 [97 S.Ct. at 2868]. Our conclusion in *Estelle v. Gamble* [429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)], *supra,* that deliberate indifference to an inmate's medical needs is cruel and unusual punishment rested on the fact, recognized by the common law and state legislatures, that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." 429 U.S. at 103 [97 S.Ct. at 290].

These principles apply when the conditions of confinement compose the punishment at issue. Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment. In *Estelle v. Gamble, supra,* we held that the denial of medical care is cruel and unusual because, in the worst case, it can result in physical torture, and, even in less serious cases, it can result in pain without any penological purpose. 429 U.S., at 103 [97 S.Ct. at 290]. In *Hutto v. Finney* [437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)], *supra,* the conditions of confinement in two Arkansas prisons constituted cruel and unusual punishment because they resulted in unquestioned and serious deprivation of basic human needs. Conditions other than those in *Gamble* and *Hutto,* alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency that we recognized in *Gamble, supra* [429 U.S.] at 103–104 [97 S.Ct. at 290–291]. But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

Given these somewhat vague standards, it is simply not possible to state that it was clearly established that the prisoner's brief confinement was cruel and unusual punishment. Thus defendant Bordenkircher is also entitled to qualified immunity on plaintiff's eighth amendment charge.

Plaintiff's final assignment of error, i.e., that he was singled out for punishment because of his duties as legal aide, thereby infringing on the constitutional right of access to the court, cannot be similarly disposed of by application of the qualified immunity doctrine. The right of access to the courts is a well-established constitutional right, *see, e.g., Boddie v. Connecticut,* 401 U.S. 371, 280–381, 91 S.Ct. 780, 787–788, 28 L.Ed.2d 113 (1971) (due process of law prohibits state from denying indigents access to court for purpose of judicially dissolving marriage), deserving the utmost protection even in the prison context. *See, Johnson v. Avery,* 393 U.S. 483, 485–49, 89 S.Ct. 747, 748–751, 21 L.Ed.2d 718 (1969) (state cannot prohibit inmate from furnishing legal advice to illiterate or poorly educated inmates regarding the preparation of habeas corpus petitions without violating prisoner's right of access to the courts); *Wolff v. McDonnell,* 418 U.S. 539, 577–580, 94 S.Ct. 2963, 2985–2986, 41 L.Ed.2d 935 (1974) (*Johnson, supra,* interpreted as also prohibiting state from denying inmates' right to aid each other in the preparation of civil rights complaints). Therefore, it cannot be said that, as a matter of law, defendant Bordenkircher is entitled to qualified immunity on this issue.

Finally, assuming, *arguendo,* that the verdict on liability could be upheld, I fail to find any evidence whatsoever in the record which would justify an award for punitive damages. In § 1983 actions a jury may assess punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625,

1640, 75 L.Ed.2d 632 (1983). The plaintiff offered no evidence which would have permitted the jury to find that Bordenkircher's actions met this standard. To the contrary, it is undisputed that during the lock-down, Warden Bordenkircher expeditiously established a screening committee to investigate the work stoppage, and that the Warden adhered to the committee's recommendation to segregate plaintiff from the prison's general population. Thus, it is beyond peradventure that Bordenkircher's actions toward plaintiff were not the product of "evil motive or intent," nor can his actions be classified as "reckless or callous" in respect to plaintiff's federally protected rights.

In sum, I would conclude that plaintiff's charge that he was deprived of property does not rise to a constitutional level under *Hudson, supra;* that Bordenkircher was entitled to a directed verdict on plaintiff's allegations of due process violations and cruel and unusual punishment pursuant to the standard of qualified, good faith immunity enunciated in *Harlow;* and that the case should be remanded solely on the issue of denial of access to the courts.