Ed WAGNER, Jr., Plaintiff-Appellant,

v.

Jon HIGGINS, Jay Pierce, Detective Catlett, and Sheryl Jackman, Individually and in their official capacities as Employees of the Louisville Police Department, Defendants-Appellees.

No. 82–5371.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 18, 1984.

Decided Feb. 8, 1985.

Contie, Circuit Judge, concurred and filed opinion.

Phillip Shepherd, Frankfort, Ky., for plaintiff-appellant.

Winston E. King, City of Louisville, Dept. of Law, Louisville, Ky., for defendants-appellees.

Before ENGEL and CONTIE, Circuit Judges, and POTTER, District Judge.*

ENGEL, Circuit Judge.

Ed Wagner, Jr. appeals a judgment of the United States District Court for the Western District of Kentucky dismissing his civil rights complaint filed pursuant to 42 U.S.C. § 1983. Wagner asserts that the defendants, officials of the Police Department of Louisville, Kentucky, stole personal property from his automobile in violation of his rights under the Fourth and Fourteenth Amendments and under Kentucky law. The question is whether, after *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), such allegations state a claim for relief under the Civil Rights Act.

The dispute arose when, on January 26, 1978, Wagner was arrested in a Convenient Food Mart on suspicion of rape. Wagner was cornered in the food mart by customers after the alleged rape victim came into the mart and accused him. The police were subsequently summoned and apprehended Wagner. After both Wagner and the alleged victim were questioned, Wagner was taken to police headquarters and his vehicle was impounded. The circumstances of the incident are more fully set forth in *Wagner v. Commonwealth*, 581 S.W.2d 352 (Ky. 1979).

In his *pro se* complaint filed in the district court, Wagner alleged that the defendant officers took his automobile into custody, towed it to the police station, and then searched and inventoried it. He further asserted that he wrote to defendant Jon Higgins, Chief of Police, complaining of the theft of all of the personal property that had been in the automobile. Wagner claimed that although an investigation of his complaint was eventually begun by an official of the City, the City determined that there had been no property in the automobile because none had been turned over to the Police Department's property clerk. Essentially, Wagner asserts that the Police Department officials stole certain property from his automobile and refused to return it. The police acknowledge that the automobile was inventoried, but Wagner claimed in his pleadings that the car was "stripped, not inventoried." Relying primarily upon *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the district court dismissed the complaint upon a finding that Wagner failed altogether to state a constitutional claim cognizable under section 1983 of the Civil Rights Act, 42 U.S.C. § 1983. The court concluded that Wagner had alleged no more than the common law tort of conversation for which there was an adequate remedy in state court.

## I.

As a preliminary matter, Wagner asserts that the trial judge improperly entertained

* The Honorable John W. Potter, United States District Court for the Northern District of Ohio, sitting by designation.

the defendants' motion for summary judgment. That motion charged that plaintiff had failed to state a claim upon which relief can be granted. Because Federal Rule of Civil Procedure 12(b), which allows this defense to be made by motion, specifically provides that "a motion making any of these defenses shall be made before pleading if a further pleading is permitted," Wagner argues that the motion was untimely filed and, thus, improperly granted.

Wagner is correct that the time for filing motions under Rule 12(b) had technically passed when defendants filed their motion. The circumstances under which the motion was filed are described in his brief before us:

> After the case had lain dormant for over a year, the District Judge entered an order to show cause why it should not be dismissed. (Order, September 29, 1981.) Mr. Wagner responded by asserting that he was ready to go to trial and that he needed no discovery because he could rely on the public record of proceeding, in his criminal case to establish his claim; Mr. Wagner requested that the case be set for trial or that a pretrial conference to discuss settlement be set. (Response to Show Cause Order, October 7, 1981.) The District Judge then entered an order in which he observed that "the sufficiency [of this response] ... may be questionable," but ordered the case retained on the docket and invited the defendants "to move for summary judgment." (Memorandum and Order, November 13, 1981.)
> Defendants moved for summary judgment under Rule 56, FRCP, although the basis for their motion was that the complaint "failed to state a claim upon which relief can be granted."

Appellant's brief at 3–4.

■ From an examination of the district court files, it is apparent that the motion actually made by the defendants was for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), although the motion improperly referred to Rule 12(b)(6).

We believe that such an incorrect reference to the Rules is not fatal where the substance of the motion is plain. Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings," Fed.R.Civ.P. 12(c). Further, Federal Rule of Civil Procedure 56(a) provides that a motion for summary judgment may be made "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party." Thus, we conclude that the motion, however styled, was properly addressed. No surprise or other prejudice to the plaintiff was claimed either at the time or now in his briefs. We, therefore, proceed to the merits.

## II.

Because Wagner's complaint referred to both Fourth Amendment and Fourteenth Amendment grounds for relief under section 1983, this appeal appeared at first blush to present issues beyond the limited scope of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Parratt v. Taylor*, the Supreme Court held that a complaint alleging negligent deprivation of procedural due process rights does not state a claim for relief under section 1983 if the state provides adequate postdeprivation remedies. It is plain to us that *Parratt v. Taylor* was not intended to limit relief from all violations of constitutionally protected individual rights merely by a showing that state remedies are adequate to redress them. Indeed, in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), a case which remains viable authority although it was reversed in part in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court recognized the availability of the Civil Rights Act to redress alleged deprivations of rights guaranteed by the search and seizure clause of the Fourth Amendment. Were the seizure of Wagner's automobile and its contents in violation of the Fourth

Amendment as incorporated into the Fourteenth Amendment, a more difficult question than existed in *Parratt v. Taylor* would be presented. A careful examination of the record, however, reveals that in fact no such Fourth Amendment claim is or can be made.

Wagner does not claim here that either his original arrest or the impoundment of his vehicle was violative of his federally guaranteed rights under the Fourth and Fourteenth Amendments. Instead, for recovery here he relies solely upon the finding of the Kentucky Supreme Court that his state, not federal, constitutional rights were violated. Wagner relies upon the following language of the Kentucky Supreme Court:

> The more difficult question is the legality of a routine police inventory of a vehicle subsequent to a lawful impoundment. Mere legal custody of an automobile by law enforcement officials does not automatically create a right to rummage about its interior. A routine police inventory of the contents of an impounded vehicle constitutes a substantial invasion of the zone of privacy of its owner or permissive user. It is an invasion additional to the intrusion upon his privacy interests occasioned by the impoundment itself. Consequently, such an inventory is impermissible unless the owner or permissive user consents or substantial necessities grounded upon public safety justify the search.
>
> *Wagner v. Commonwealth,* 581 S.W.2d at 356–57 (footnote omitted).[1]

An examination of the Kentucky Supreme Court's decision makes it clear that the impoundment of the vehicle was lawful. The court held only that the later inventory of the vehicle while in police custody violated section 10 of the Constitution of the Commonwealth of Kentucky. Although in his criminal appeal Wagner relied upon both the Fourth Amendment and the comparable Kentucky constitutional provision, the Kentucky court took care to limit its decision to its own interpretation of section 10 of the state constitution, 581 S.W.2d at 356. In doing so, it expressly took note of *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), which held that a routine inventory search of an automobile lawfully impounded by the police was not violative of the Fourth Amendment as applicable to the states under the Fourteenth Amendment. The Kentucky court here, like the South Dakota court in *Opperman* on remand, *State v. Opperman,* 247 N.W.2d 673 (S.D.1976), exercised its right to impose a higher standard for police inventory searches than that demanded by the Federal Constitution.

In deciding *Opperman,* the United States Supreme Court took care to stress that the inventory search was reasonable under the circumstances in that case. There the inventory was a routine practice followed by police departments whenever vehicles were removed for storage after being cited for municipal ordinance violations. There was no suggestion that the inventory was "a pretext concealing an investigatory police motive." 428 U.S. at 376, 96 S.Ct. at 3100. Upon the facts available to us here, it is apparent that there was a double motive for the inventory search of Wagner's car. One motive was, as stated by the officers, to inventory the car's contents for protection against just the sort of claim that has been made here, but the other motive was to discover any evidence of the crime of which Wagner was accused.

The factual basis supporting probable cause for the search is well set out in the Kentucky Supreme Court's decision. According to the victim, on January 26, 1978, she was standing at a bus stop in Louisville

---

**1.** In *Estep v. Commonwealth,* 663 S.W.2d 213, 216 (Ky.1983), the Kentucky Supreme Court overruled *Wagner v. Commonwealth* to the extent that it conflicted with the court's opinion in *Estep.* However, *Estep* held only that no warrant is needed to search the compartments of a car stopped on the road by the police. Since *Estep* does not concern the problem of an impounded car, the opinion does not appear to have overruled the holding of *Wagner* quoted above.

waiting for her bus to take her to her employment at Suburban Hospital when Wagner pulled up in his car and offered her a ride to work. She accepted the ride. The Kentucky Supreme Court opinion graphically describes what the victim claimed happened thereafter:

> Wagner suddenly pulled out a knife and placed it at Amy's throat. He told her "Don't move or I'll slit your throat." She was surprised at this and jumped. The knife cut her finger. He tied her hands behind her back with a scarf which had been hanging from his rear view mirror. He took another scarf and tied one end around her throat and the other end to the scarf holding her hands. He told her not to struggle or she would choke herself to death. He made her lie down on the front seat of the car and as he kissed her he pulled up her shirt and placed the knife on her stomach indicating that it would be within easy reached [sic] if he needed it.

*Wagner v. Commonwealth*, 581 S.W.2d at 354. Once Wagner had been detained by the customers of the convenience store and the police had arrived, the victim pointed to Wagner's car and through the car's windows to the scarves and to the upholstery which had a spot that she said was blood from her cut.

Plainly, if the victim was to be believed (and we believe that the police would have been derelict in their duty if they had not acted as they did here), the car itself had been employed by Wagner in a kidnapping and as part of a scheme to rape and assault the victim. More than that, the vehicle also contained potentially incriminating evidence which corroborated the victim's claim. Both the car and the scarf were in plain view. It is, therefore, not surprising that Wagner does not claim that the seizure of the vehicle was constitutionally deficient. Instead, Wagner asserts very simply that the "theft" or "stripping" of the contents of the vehicle during the subsequent lawful police custody was itself in violation of his Fourth and Fourteenth Amendment right to be free of unreasonable searches and seizures.

In resolving this question, we first must determine whether the police may, without a warrant, validly search a vehicle which has already been lawfully impounded as part of the evidence of a felony.

■ So much has been written by the Supreme Court and other authorities concerning the applicability of the Fourth Amendment to searches and seizures of automobiles that we believe we may be excused from any extended recitation of the tortuous path of judicial philosophy concerning that issue over the years. However, *see, e.g.,* the interesting analyses of Professor Yale Kamisar appearing in 3 J. Cooper, Y. Kamisar & L. Tribe, *The Supreme Court: Trends and Developments, 1980–81* 69–111, and 4 J. Cooper, Y. Kamisar & L. Tribe, *The Supreme Court: Trends and Developments, 1981–82* 71–95, both published by National Practices, Inc. Any doubts concerning the constitutionality of such searches have now been removed by *Michigan v. Thomas*, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982), and *Florida v. Meyers*, —— U.S. ——, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984). We, therefore, hold that the undisputed facts of this case establish no violation of Wagner's right to be free of unreasonable searches and seizures within the meaning of the Fourth Amendment.

The only question remaining is whether the conduct complained of is nonetheless actionable under section 1983 because the Kentucky Supreme Court found the police's inventory search of Wagner's car to be violative of section 10 of the Kentucky Constitution. Wagner's state constitutional guarantees do not necessarily provide him with corresponding federal constitutional protections. Justice Black confronted this same issue in *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967):

> [T]he question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment. Just as a search authorized by

state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one.

*Id.* at 61, 87 S.Ct. at 790. Continuing, Justice Black observed:

> Our holding, of course, does not affect the State's power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so. And when such state standards alone have been violated, the State is free, without review by us, to apply its own state harmless-error rule to such errors of state law.

*Id.* at 62, 87 S.Ct. at 791. Thus, if Wagner is entitled to any relief, it must be because the Kentucky constitutional provision cited confers upon him some property or liberty interest which is entitled to protection under the Due Process Clause of the Fourteenth Amendment. However, we hold that even if such a protected interest was created, Wagner's section 1983 claim must fail.

Our inquiry leads us directly to *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and to Justice Rehnquist's observation:

> Unquestionably, respondent's claim satisfies three prerequisites of a valid due process claim: the petitioners acted under color of state law; the hobby kit falls within the definition of property; and the alleged loss, even though negligently caused, amounted to a deprivation. Standing alone, however, these three elements do not establish a violation of the Fourteenth Amendment. Nothing in that Amendment protects against all deprivations of life, liberty, or property by the State. The Fourteenth Amendment protects only against deprivations "without due process of law." *Baker v. McCollan,* 443 U.S. [137], at 145 [99 S.Ct. 2689 at 2695, 61 L.Ed.2d 433 (1979) ]. Our inquiry therefore must focus on whether the respondent has suffered a deprivation of property without due process of law. In particular, we must decide whether the tort remedies which the State of Nebraska provides as a means of redress for property deprivations satisfy the requirements of procedural due process.

*Parratt v. Taylor,* 451 U.S. at 536–37, 101 S.Ct. at 1913–14 (footnote omitted).

A repair to the pleadings here convinces us that plaintiff's complaint is not directed to the inventory search itself but, rather, to his claim that the car was "stripped, not inventoried." As Wagner put it, "[p]laintiff does not claim these items were taken, plaintiff states unequivocally that they were stolen" and "the testimony of the defendants ... will show that the car was loaded with property." Plaintiff's Response to Motion for Summary Judgment at 2. Plaintiff Wagner, therefore, does not complain of some procedural deficiency in the practices of the Louisville Police Department which might conceivably be remediable under section 1983 as the deprivation of a right to due process even in the absence of any actual injury. *See Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978). Instead, Wagner complains of the unlawful taking of his property either by the defendant police officers directly or by their negligence as custodians. There is no suggestion that Kentucky law or the rules and regulations of the Louisville Police Department authorize the conversion of the property.

█ We are left, therefore, with the same conclusion that Judge Ballantine reached in the district court: plaintiff Wagner's complaint only makes out a case of an alleged unlawful conversion of his property by the Kentucky police officers named as defendants in this case or, alternatively, for custodial negligence causing the loss of the property. Judge Ballantine, an experienced jurist who had previously served as a judge of the Circuit Court in Kentucky, held that a common law action for conversion was available to Wagner in the state courts of Kentucky. The record also suggests that Wagner could have sought relief by application to the state judge before

whom the criminal charges were filed.[2] This is a common and well-recognized means for obtaining relief where a defendant seeks the return of property seized from him during a criminal prosecution. Because Wagner brought suit only against the officers individually and in their official capacities and not against the municipality of Louisville or the Commonwealth of Kentucky, we need not inquire whether Kentucky law provides any forum for relief against those governmental bodies.

Nowhere in his pleadings or other allegations has plaintiff asserted that Kentucky law deprived him of a private cause of action of the type suggested by Judge Ballantine. Our court has held twice recently that in an action under 42 U.S.C. § 1983 for deprivation of property under color of law without due process, the plaintiff must prove the absence of adequate state remedies as an element of the constitutional tort. We have also held, consistent with *Parratt v. Taylor*, that this obligation extends not only to negligent deprivation of a prisoner's property, but also to claimed intentional deprivations which do not implicate any other constitutional protections:

> As we read *Parratt*, the principle being applied does not turn on the question of whether the claimed constitutional tort affecting property is caused by intentional conduct or negligent conduct or is based on strict liability. Nor does it matter whether the writ at common law would be in detinue (action for wrongful detention of a chattel by a bailor), trespass *de bonis asportatis* (action for carrying away plaintiff's chattels), trespass on the case (roughly speaking, an action for negligence) or a motion in a criminal case for return of property held as evidence. The reasoning of *Parratt* appears to extend at least to all section 1983 cases claiming a procedural due process injury to a property interest without regard to whether at common law a plaintiff would have sued in tort or contract and would have based his action on intent, negligence or strict liability....

> ....

> Section 1983 was not meant to supply an exclusive federal remedy for every alleged wrong committed by state officials. Rather, the statute is a remedy for only those wrongs which offend the Constitution's prohibition against property deprivations without procedural due process. Thus we hold that in section 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong. In the instant case the plaintiff has neither alleged nor shown any significant deficiency in the state's remedies.

*Vicory v. Walton*, 721 F.2d 1062, 1065–66 (6th Cir.1983) (footnotes omitted), *cert. denied*, —— U.S. ——, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984). As Judge Contie has correctly observed in his separate concurrence, the Supreme Court has also now held that *Parratt* bars section 1983 suits alleging intentional, as well as negligent deprivations of property without due process. *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *See also Preston v. Smith*, 750 F.2d 530 at 531–32 (6th Cir.1984); *Campbell v. Shearer*, 732 F.2d 531 (6th Cir.1984).

We agree with the district court that under *Parratt v. Taylor* Wagner's complaint fails to state a cause of action cognizable under section 1983.

AFFIRMED.

---

**2.** The record contains a long inventory of allegedly missing items with a total value of $2,340.00 by Wagner's calculations. The record also contains a letter by James H. Highfield, Assistant Director of Law for the City of Louisville, indicating the City's review of the claim and its conclusion that it had no evidence that any of these items were being retained by the City. Mr. Highfield suggested that Wagner file a motion in the court in which he was tried for a return of any items which the police might have.

CONTIE, Circuit Judge, concurring.

I agree with the conclusions reached by the majority and with much of its analysis. On several points, however, my line of reasoning departs from that of my colleagues. Accordingly, I write separately.

Wagner's complaint may be divided into three broad categories of claims. The first rests on the fourth amendment, the second on the due process clause of the fourteenth amendment and the third involves a largely unarticulated equal protection claim. Since the due process claims are the simplest, I will discuss them first.

The essential factual allegation underlying each of Wagner's claims is that someone in the police department stole personal property from his car. This is said to be a deprivation of property without due process of law, in violation of the fourteenth amendment. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), clearly applies to this claim. I would add to the majority's discussion of this issue only that *Hudson v. Palmer,* ── U.S. ──, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), has made it clear that the *Parratt* principle applies to intentional as well as to negligent deprivations of property without due process, when the deprivation did not occur pursuant to an established state procedure. *See id.* at 3203–04. *Cf. Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Since Wagner has not demonstrated the absence of a meaningful state post-deprivation remedy, his due process claims fail under *Parratt.* So much is clear.[1]

Wagner also claims that the theft of his property violated the fourth amendment. It is now clear that *Parratt* applies only to procedural due process claims and not to claims involving a violation of a substantive constitutional right. A number of circuits have so held, *see, e.g., Wolf-Lillie v. Sonquist,* 699 F.2d 864, 871–72 (7th Cir.1983); *Duncan v. Poythress,* 657 F.2d 691, 704–05 (5th Cir.1981), *cert. dismissed,* 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982), and five members of the Supreme Court have expressed this view, *see Hudson,* 104 S.Ct. at 3208 n. 4 (Stevens, J., joined by Brennan, J., Marshall, J., and Blackmun, J., concurring in part and dissenting in part); *Parratt,* 451 U.S. at 552–53, 101 S.Ct. at 1921–22 (Powell, J., concurring in the result). If, therefore, Wagner's complaint states a fourth amendment claim, this case cannot be disposed of on the basis of *Parratt.*

As the majority effectively demonstrates, the initial seizure of Wagner's car and the search for and seizure of certain items out of it at police headquarters did not, on the undisputed facts shown here, violate the fourth amendment. Wagner claims, however, that another fourth amendment event occurred at police headquarters: items of his personal property were stolen—a permanent deprivation going beyond the normal temporary dispossession that occurs when evidence is seized.[2] Because I do not believe that cases such as *Florida v. Meyers,* ── U.S. ──, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984), and *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), authorize police officers to *steal* personal property from a properly impounded vehicle, but instead allow them only to search the vehicle and temporarily seize items from it for evidentiary use, I write sepa-

---

**1.** Wagner also alleges that the defendants' conduct violated several state constitutional and statutory provisions. The majority correctly decides that even if these provisions create an interest entitled to due process protection, the defendants deprived Wagner of that interest only by a "random and unauthorized act"; this claim is thus within the scope of *Parratt. See* 451 U.S. at 541, 101 S.Ct. at 1916.

The complaint also contains fifth amendment due process claims which parallel the four-

teenth amendment claims. Since *Parratt* applies to fifth amendment due process claims as well as to fourteenth amendment due process claims, *see Weiss v. Lehman,* 676 F.2d 1320 (9th Cir.1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 951 (1983), Wagner's fifth amendment claims also fail.

**2.** The defendants have not alleged that there was any contraband in Wagner's car.

rately to explain why this claim does not state a fourth amendment violation.

The claim that the continued retention by state actors of personal property, as opposed to its temporary seizure for use as evidence, violates the fourth amendment is, indeed, novel. Wagner has not presented us with any authorities holding that a permanent dispossession such as the one alleged in this case violates the fourth amendment. At best, such conduct has been thought of as a possible deprivation of property without due process in violation of the fourteenth amendment. *See, e.g., Coleman v. Faulkner,* 697 F.2d 1347 (10th Cir.1982); *Kimbrough v. O'Neil,* 545 F.2d 1059 (7th Cir.1976).[3]

The Supreme Court was presented with a similar claim in *Hudson.* In that case, a prison inmate alleged that the defendants searched for, seized and destroyed personal property from his prison cell, all of which was said to violate the fourth amendment. Because these events occurred in a prison cell, where there is no reasonable expectation of privacy, *see* 104 S.Ct. at 3200–02, the majority did not decide whether a theft or other permanent dispossession in another setting would violate the fourth amendment, *see id.* at 3201 n. 8. Justice O'Connor, however, did address this issue and concluded that,

> if the act of taking possession and the indefinite retention of the property are themselves reasonable, the handling of the property while in the government's custody is not itself of Fourth Amendment concern. The non-privacy interests protected by the Fourth Amendment do not extend beyond the right against unreasonable dispossessions. Since the exigencies of prison life authorize officials indefinitely to dispossess inmates of their possessions without specific reason, *any losses that occur while the property is in official custody are simply not redressable by Fourth Amendment litigation.*

*See id.* at 3206 (O'Connor, J., concurring) (emphasis added). The appropriate source of constitutional protection against such acts lies not in the fourth amendment but in the due process clause of the fourteenth amendment. *See id.* at 3206–07.

Although a majority of the Supreme Court has not had occasion to adopt Justice O'Connor's views, I find her reasoning persuasive, particularly in the absence of contrary authority. Accordingly, the alleged theft of Wagner's property did not work any fourth amendment wrong; instead, it would at most be a deprivation of property without due process and *Parratt* fully applies to that claim.

Finally, Wagner claims that he was denied equal protection of the law because his property was illegally seized and ultimately stolen while that of other persons was not. While this claim surely must fail, Wagner is entitled to a brief explanation of why this is so.

If Wagner had alleged that the law was applied differently to him because of race, gender, age or any other type of classification, then it would be hard to show how his complaint fails. *See, e.g., Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886). Wagner's complaint is, however, devoid of any such allegations. Rather, he merely asserts that he was treated one way and everyone else another. This has never been thought to raise an equal protection claim. *See Beck v. Washington,* 369 U.S. 541, 554–55, 82 S.Ct. 955, 962–63, 8 L.Ed.2d 98 (1962); *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944).

Accordingly, the only claims properly stated in Wagner's complaint are subject to *Parratt* and the district court correctly dismissed his complaint.

---

**3.** Such a claim would, of course, be subject to *Parratt. See Coleman,* 697 F.2d at 1349.