95 F.3d 1152
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Betty J. HANDLEY, Plaintiff-Appellant,
and
GALLAGHER BASSETT SERVICES, INC.; Woman's World Shops,
Inc., Intervening Plaintiffs,
v.
Jack WRIGHT; Norman Uptagrafft; Jim Adams; Winmar
Company, Inc., Defendants-Appellees.
 No. 95-5670.
 United States Court of Appeals, Sixth Circuit.
 Aug. 16, 1996.
 
 Before: KENNEDY, CONTIE, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Betty J. Handley filed this 42 U.S.C. §§ 1983 and 1985 action against the Winmar Company (the owner and operator of the Oxmoor Center Mall in Jefferson County, Kentucky), Jack Wright (Winmar's Director of Security), and two Oxmoor Center Mall security officers (Norman Uptagrafft and Jim Adams) claiming that she was assaulted and detained against her will. The district court dismissed Handley's action and her subsequent motion to alter or amend the judgment. We affirm.
 
 I.
 
 2
 Oxmoor Center Mall policy requires that store employees obtain authorization slips from mall security when they intend to work more than one hour after the mall closes.[1] Though store managers are instructed to contact Oxmoor Center's customer service office during normal business hours to obtain authorization, mall employees may call mall security directly if an employee realizes after the mall closes to the public that he will not be able to leave the mall within the hour. The defendants insist that mall employees are routinely given late night authorization.
 
 
 3
 Handley worked in the mall managing Woman's World, a clothing store. Though employed at Oxmoor Center Mall for nearly a decade, Handley insists that she was not familiar with the mall's late night authorization policy until confronted by mall security officers in 1992. Specifically, Handley worked past 10:00 p.m. on March 28, 1992, without notifying mall security. Officer Uptagrafft visited Woman's World the next day to remind Handley of the need to notify mall security if she or her staff intended to work late. When Handley claimed to be unaware of the policy, Officer Uptagrafft obtained a copy of the policy, handed it to Handley, and explained the procedure for obtaining the necessary authorization. Handley complied that evening and every evening the following week.
 
 
 4
 Despite her initial compliance with the policy, Handley failed to seek authorization for the third week in April, 1992. On April 15, Officer Uptagrafft entered Woman's World to remind Handley of the need to obtain authorization. Apparently angered by Officer Uptagrafft's visit, Handley contacted Ken Young, Oxmoor Center Mall's General Manager. Young subsequently met with Handley and explained the need for the policy and thought that the policy would be followed thereafter. However, on April 22, 1992, Handley failed to notify mall security that she would be in the store past 10:00 p.m. that evening. When Officer Adams approached the store that evening to ask Handley how late she would be, Handley apparently responded in a "hostile manner."
 
 
 5
 The next day, Officer Uptagrafft and Director of Security Wright approached Handley to discuss the late night authorization policy once again. Though the parties dispute what happened next, Uptagrafft and Wright insist that they explained the need for the late night authorization policy to Handley in a civil, non-confrontational tone. Handley, however, claims that Wright yelled at her for working late without authorization and insists that the two men approached her menacingly and told her to "shut up." Handley also asserts that Wright and Uptagrafft prevented her from walking away, and claims that some inadvertent physical contact occurred. Though Handley continued to work for Woman's World until June 1993, she took a medical leave of absence thereafter citing physical and emotional ailments arising from these incidents including depression, weight fluctuation, lumbar strain and an inability to sleep. Woman's World fired her approximately six months later.
 
 
 6
 On February 19, 1993, Handley filed this 42 U.S.C. §§ 1983 and 1985 action. The defendants moved to dismiss Handley's complaint for failure to state a cause of action. On February 13, 1995, the district court dismissed Handley's action:
 
 
 7
 Accepting the allegations of plaintiff's complaint as true, Handley claims she was accosted by Uptagrafft and Wright while she was working at Woman's World store in the Oxmoor Center Mall and somehow suffered bodily injury as a result of fleeing from the defendants on foot.... Plaintiff was not arrested or detained or charged with or accused of criminal activity. If there was a dispute between the parties it was over Oxmoor Center Mall policy. Plaintiff's allegations may state a cause of action under state tort law, but the facts as alleged do not rise to the level of a constitutional deprivation. Therefore, plaintiff's claims pursuant to Section 1983 and Section 1985(3) will be dismissed for failure to state a claim upon which relief can be granted.
 
 
 8
 District Court's February 13, 1995 Memorandum Opinion at 3 (citations omitted). On April 6, 1995, the district court denied Handley's motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e). Handley appealed.
 
 II.
 
 9
 Though "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citation omitted), "more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir.1988) (citation omitted). Accepting Handley's factual allegations as true, we conclude that Handley can prove no set of facts which would entitle her to relief. Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.), cert. denied, 498 U.S. 867 (1990).
 
 
 10
 "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citation omitted). To state a claim under § 1983, a plaintiff must allege that: she was deprived of a right secured by the Constitution and the laws of the United States; and, the deprivation was caused by a person acting under color of state law. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155-56 (1978). "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." Baker v. McCollan, 443 U.S. 137, 146 (1979). See also Wilson v. Beebe, 770 F.2d 578, 582 (6th Cir.1985) (en banc) (section 1983 does not impose liability for violations of state tort law). See generally Wagner v. Higgins, 754 F.2d 186, 192 (6th Cir.1985) ("[I]n an action under 42 U.S.C. § 1983 for deprivation of property under color of law without due process, the plaintiff must prove the absence of adequate state remedies as an element of the constitutional tort.").
 
 
 11
 Though Handley asserts that the defendants verbally and physically harassed her, the defendants' actions, even if accepted as true, do not rise to the level of a constitutional deprivation of rights. The district court therefore properly dismissed Handley's section 1983 action for failure to state a claim upon which relief can be granted. Moreover, the district court properly dismissed Handley's section 1985 claim because Handley failed to allege a constitutional deprivation, supra, and presented no evidence to support a racially motivated conspiracy.
 
 
 12
 Accordingly, we AFFIRM.
 
 
 
 [1]
 The mall ordinarily closes to the public at 9:00 p.m. most evenings