30 F.3d 134
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lydia STACK and Aid to Animals of Michigan, Inc.,
Plaintiffs-Appellants,
v.
Michael C. KILLIAN, Judy A. Duncan, Michigan Anti-Cruelty
Society, Mark Ruggles, Greg Ferriby, Cliff Kenny, Defendants,
Nancy A. Frank and Debra A. Donch, Defendants-Appellants.
 No. 93-1667.
 United States Court of Appeals, Sixth Circuit.
 July 26, 1994.
 
 Before: MARTIN, SUHRHEINRICH and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case is before us on interlocutory appeal from the district court's order of summary judgment in favor of two of the defendants, Nancy Frank and Debra Donch, based on what the district judge characterized as a "classic qualified immunity claim." We find no error and affirm.
 
 
 2
 The plaintiffs, Lydia Stack and Aid to Animals of Michigan, Inc., brought this action under 42 U.S.C. Sec. 1983, claiming that their civil rights were violated when the animal shelter they maintain was "raided" by all the named defendants pursuant to the execution of a search warrant. Defendants Frank and Donch were sued in their capacity as licensed veterinarians employed by the Michigan Department of Agriculture. Their primary responsibilities included the inspection of animal shelters.
 
 
 3
 The warrant process was initiated by Donch after she received information from confidential sources (who were, apparently, then current or former employees of the shelter) concerning the condition of animals housed in the shelter, the improper burial of animals, and miscellaneous employment law violations. Prompted by this information, Donch inspected the shelter and found, according to her affidavit, "animals in ill health with no evidence of treatment, animals being maintained in such a manner as not to comply with established regulations and as a result of inactions by the operators of the facility the animals confined within were forced to endure undue pain and suffering."
 
 
 4
 Based on her inspection, Donch swore out an affidavit and obtained a search warrant from a Michigan state court magistrate. The warrant authorized the appellees to, among other things, seize the animals in the shelter and euthanize those animals suffering undue pain pursuant to the following instructions:
 
 
 5
 Further, upon examination and upon the recommendation of a Doctor of veterinary medicine humane euthanasia of any seized animal shall occur if any one of the following conditions exist (1) the animal has any type of medical problem that causes some undue pain and suffering (2) that housing infirmed animal with other healthy animal may jeopardize the health of other animals housed at or within the same facility (3) if it is determined by the attending doctor of veterinary medicine that an animal may be reasonably expected to be returned to a state of good health then the animal may remain on site with the understanding that said animal will be provided with required medical care by a doctor of veterinary medicine and proof of same made available to a representative of the Michigan Department of Agriculture upon demand (4) animals that remain on site can be checked or examined by a representative of the Department of Agriculture on a daily basis until restored to a good health or an alternative disposition is reached. It is the expressed intent of the affiant to save as many of the animals on site as possible but not at the risk of jeopardizing healthy animals housed within the same holding area.
 
 The warrant further authorized that
 
 6
 other items to be seized may include all business records, banking records, employee records, payroll records, any tags or licenses recognized as being a means of identifying animals issued or controlled by a a government agency, any records of medical care provided to animals, records pertaining to animal inventory and all suspected substances that may be medication that has been improperly obtained. During the execution of this warrant video taping and photographing may occur.
 
 
 7
 Lastly, the warrant authorized the search of any suspected animal burial sites.
 
 
 8
 On the following day, the named defendants--including Donch and Frank--and three county sheriff's deputies executed the search warrant. During the course of the search, all the animals in the shelter were medically evaluated, and pursuant to the instructions in the warrant, 77 animals were determined to have "medical problems that cause[d] them undue pain and suffering." These animals were euthanized that day, and their carcasses were disposed of. The search party also seized records relating to the operation of the shelter and prescription medication which was allegedly acquired and administered without a prescription. Additionally, one dog carcass was found buried in a shallow grave.
 
 
 9
 Also pursuant to the terms of the warrant, defendants Donch and Frank conducted two follow-up inspections within several weeks of the original search.
 
 
 10
 Stack was subsequently charged with misdemeanor cruelty to animals in violation of M.C.L. Sec. 752.21 and the misdemeanor of improper burial of animals in violation of M.C.L. Sec. 750.75. Midway through her jury trial in Michigan state court, Stack pleaded nolo contendere to six counts of cruelty to animals and one count of improper burial of animals.
 
 
 11
 Some six months later, she and Aid to Animals filed the Sec. 1983 action that is involved in this appeal, alleging various constitutional violations. Shortly thereafter, defendants Frank and Donch moved for summary judgment. After conducting a hearing on the motion, the district court granted summary judgment on the grounds of qualified immunity. Specifically, the district judge found that "defendants [Donch and Frank were] ... officers acting, or reasonably believing that they're acting within the scope of their authority. I don't think there's any question about that at all. Government agencies engaged in the exercise of ... discharge of government function.... This is certainly a government function." The district court also found a lack of bad faith in the destruction of the animals seized from Stack's shelter, noting that "the search warrant on its face even indicates euthanasia was an appropriate means."
 
 
 12
 On appeal, the plaintiffs contend that there was insufficient probable cause to support issuance of the warrant; that the warrant was impermissibly broad, on its face and in its execution; that in the absence of a predeprivation hearing, the euthanization procedure utilized by Frank and Donch was unconstitutional and that precipitous disposal of the carcasses amounted to illegal destruction of potentially exculpatory evidence; that two post-search inspections explicitly authorized by the warrant constituted "warrantless searches"; and that the participation of private parties in the search violated the Fourth Amendment.
 
 
 13
 Our de novo review of the legal questions raised by this appeal is governed by standards enunciated by the United States Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), as modified by Anderson v. Creighton, 483 U.S. 635 (1987). Under that authority, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 813; accord, Anderson v. Creighton, supra ("[an] officer who participates in a search that violates the Fourth Amendment may [not] be held personally liable for money damages if a reasonable officer could have believed that the search comported with the Fourth Amendment").
 
 
 14
 We have carefully reviewed the plaintiffs' various challenges to the district judge's ruling and conclude, as he did, that defendants Frank and Donch are entitled to qualified immunity under Harlow. We therefore decline to disturb his grant of summary judgment in their favor.
 
 
 15
 The order of the district court is AFFIRMED.