96 F.3d 159
 Lydia STACK and Aid to Animals of Michigan, Inc.,
Plaintiffs-Appellants,
v.
Michael C. KILLIAN, Judy A. Duncan, Michigan Anti-Cruelty
Society, Mark Ruggles, Greg Ferriby, and Cliff
Kenny, Defendants-Appellees.
 No. 94-2230.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 9, 1996.
Decided Sept. 16, 1996.
Rehearing and Suggestion for Rehearing En Banc Denied Dec. 12, 1996.
 
 John G. Makris (argued and briefed), Troy, MI, for plaintiffs-appellants.
 Matthew A. Seward, Rosalind Rochkind (briefed), Robert J. Squiers (argued), Garan, Lucow, Miller, Seward, Cooper & Becker, Detroit, MI, for Michael C. Killian.
 Michael L. Updike (argued and briefed), Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, MI, for Judy A. Duncan, Michigan Anti-Cruelty Society.
 Michael J. Watza (argued), Linda M. Garbarino, Kitch, Drutchas, Wagner & Kenney, Detroit, MI, for Mark Ruggles, Greg Ferriby.
 Michael J. Watza, Linda M. Garbarino, Kitch, Drutchas, Wagner & Kenney, Detroit, MI, Jacob Schwarzberg (briefed), Southfield, MI, for Cliff Kenny.
 Before: SILER and BATCHELDER, Circuit Judges; CARR, District Judge.*
 SILER, Circuit Judge.
 
 
 1
 Lydia Stack and Aid to Animals of Michigan, Incorporated ("Aid to Animals") [collectively, "Stack"] appeal the district court's grant of summary judgment to defendants. Stack brought this 42 U.S.C. § 1983 action, claiming that her rights were violated when her animal shelter was raided by the defendants. For the reasons stated hereafter, this court AFFIRMS.
 
 
 2
 * Lydia Stack operates Aid to Animals, a non-profit animal shelter that houses approximately 300 dogs and cats. The shelter adopts a "no-kill" policy. That is, animals at the shelter are rarely euthanized; instead, the animals live out their natural lives while being fed and cared for at the shelter. Stack maintains her residence on the Aid to Animals premises.
 
 
 3
 Stack alleges that Dr. Debra Donch, a veterinarian with the Michigan Department of Agriculture, illegally obtained a search warrant to facilitate a search and seizure at the Aid to Animals complex on July 11, 1991. The search warrant was executed under the supervision of three Sanilac County sheriff's deputies, defendants Mark Ruggles, Greg Ferriby and Cliff Kenny (collectively, "the deputies"). Joining Dr. Donch was Dr. Nancy Frank, another Michigan Department of Agriculture employee, Michael Killian, an employee of the Michigan Anti-Cruelty Society, and Dr. Judy Duncan, a veterinarian in private practice who had been asked to assist in the inspection. A news reporter, accompanied by television cameras, was also present during the search. Pursuant to the search, seventy-seven animals were seized and euthanized.
 
 
 4
 Stack was arrested and charged with animal cruelty. She pleaded nolo contendere to one count of animal cruelty and was found guilty on counts of improper burial of animals. Stack subsequently filed this action against the defendants pursuant to 42 U.S.C. § 1983. Drs. Donch and Frank's motion for summary judgment based on the defense of qualified immunity was granted by the district court and affirmed by this court. Stack v. Killian, 30 F.3d 134, 1994 WL 389204 (6th Cir. July 26, 1994). The other defendants also moved for summary judgment. After a supplementary briefing, the district court issued an order granting the motions for summary judgment on September 21, 1994 based upon the qualified immunity defense.
 
 II
 
 5
 A defendant is not entitled to summary judgment unless he can show that no genuine issue exists as to any material fact. FED. R. CIV. P. 56(c). Summary judgment should not be granted unless the moving party has established a right to judgment. In considering a summary judgment motion, a court must view the facts most favorably to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
 
 III
 A. Standards of Qualified Immunity
 
 6
 Section 1983 provides a cause of action against any person, who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution and federal law. 42 U.S.C. § 1983. When officials are sued in their individual capacities, they may be protected from liability for damages if their alleged wrongful conduct was committed while they performed a function protected by qualified immunity. See Cagle v. Gilley, 957 F.2d 1347, 1348 (6th Cir.1992). Officials who perform discretionary functions are generally entitled to qualified immunity from individual liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights. See Christophel v. Kukulinsky, 61 F.3d 479, 484 (6th Cir.1995); Thomas v. Whalen, 51 F.3d 1285, 1289 (6th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 518, 133 L.Ed.2d 426 (1995). The question of whether an official is protected by qualified immunity turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken. Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 2738-39, 73 L.Ed.2d 396 (1982). Individual claims of immunity must be analyzed on a fact-specific, case-by-case basis to determine whether the constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendant's position would understand that what she was doing violates those rights. See Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).
 
 
 7
 B. General Search Warrant/Procedural Due Process Violations
 
 
 8
 Stack argues that the defendants clearly violated her Fourth Amendment rights by raiding the shelter and taking property pursuant to a defective warrant. Moreover, she alleges that because the defendants denied her the opportunity to contest the seizure of the seventy-seven animals before they were euthanized, she was denied her procedural due process rights guaranteed by the Fourteenth Amendment.
 
 
 9
 A previous panel has already addressed Stack's allegations concerning a defective search warrant and her procedural due process concerns relative to Donch and Frank. The court concluded that the conduct at issue did not violate clearly established statutory or constitutional rights. Stack, 1994 WL 389204, at * 2. In that a previous panel has already ruled that the search warrant cannot serve as a basis for a constitutional violation against Donch and Frank and that Stack's procedural rights were not violated by Donch and Frank, it would be incongruous for this court to determine that the warrant can serve as a basis for a constitutional violation for the defendants who performed at the direction of Donch and Frank. See Bills v. Aseltine, 52 F.3d 596, 604 (6th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 179, 133 L.Ed.2d 118 (1995) [hereinafter Bills II ]. Thus, the defendants did not act unreasonably in executing the search pursuant to the warrant or euthanizing the animals.
 
 C. Search Warrant and the Television Crew
 
 10
 Stack baldly alleges that the presence of a news reporter and camera crew at the search of her house and the shelter violated her constitutional rights. It is well established that those who execute lawful search warrants must do so in a reasonable manner. "Officers in 'unquestioned command' of a dwelling may ... exceed the scope of the authority implicitly granted them by their warrant when they permit unauthorized invasions of privacy by third parties who have no connection to the search warrant or the officers' purposes for being on the premises." Bills v. Aseltine, 958 F.2d 697, 704 (6th Cir.1992) [hereinafter Bills I ].[1] The Bills I court concluded:
 
 
 11
 The available evidence seems to show that police actively procured a private person to tour plaintiff's home with a camera for purposes utterly unconnected with the search warrant they had already executed.
 
 
 12
 Whether this breached the trust under which they held the premises in their complete command, or whether, stated another way, this unreasonably exceeded the scope of the warrant, is a question for a jury in this case. Summary judgment should not have been granted.
 
 
 13
 Id. at 705; see also Buonocore v. Harris, 65 F.3d 347, 358-59 (4th Cir.1995) (agreeing with Bills I that a warrant does not implicitly authorize government officers to invite a private individual to tour plaintiff's home for a mission unrelated to the search authorized by the warrant); Ayeni v. Mottola, 35 F.3d 680, 683 (2d Cir.1994) (holding that an agent's invitation to a television crew to broadcast a search violated clearly established Fourth Amendment rights), cert. denied, --- U.S. ----, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995); United States v. Sanusi, 813 F.Supp. 149, 160-61 (E.D.N.Y.1992) ("Inviting private citizens whose presence is not necessary to the execution of the warrant to join the search party is a failure of public trust--one that indicates a disregard of the important values at stake when the government enters a person's home."). But see Parker v. Boyer, 93 F.3d 445, 447 (8th Cir. 1996) (holding that it is not "self-evident that the police offend general fourth-amendment principles when they allow members of the news media to enter someone's house during the execution of a search warrant" and because Ayeni and Buonocore only represent a trend in the law, it was not clearly established at the time of the search that the defendants violated Constitutional rights).
 
 
 14
 Stack alleges that Killian arranged for the television crew to be present and that the deputies permitted their presence during the search. Unlike the search warrants in the cases cited above, however, the warrant at issue authorized "videotaping and photographing" during the execution of the search. Therefore, even though the warrant said nothing about a television crew, the defendants were justified, under the explicit language of the warrant, in permitting the accompaniment of camera personnel.
 
 IV
 
 15
 Stack asserts that the qualified immunity defense is not available to the private parties involved in the search, Duncan and Killian. Qualified immunity is generally not available to private parties. See Wyatt v. Cole, 504 U.S. 158, 168-69, 112 S.Ct. 1827, 1833-34, 118 L.Ed.2d 504 (1992) (holding that immunity unavailable to private parties responsible for invoking state replevin, garnishment, or attachment statute); cf. McKnight v. Rees, 88 F.3d 417, 420 (6th Cir.1996); Vector Research, Inc. v. Howard & Howard Attorneys P.C., 76 F.3d 692, 698 (6th Cir.1996). This court need not decide this issue in the case at bar, however. As the constitutional issues concerning the validity of the warrant and the presence of the media at the execution thereof have already been resolved, Stack has not asserted a constitutional claim, a prerequisite for this § 1983 action, that can be asserted against Duncan and Killian.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The prior panel did not address the concerns raised by the presence of the television crews; rather, it addressed whether "the participation of private parties in the search violated the Fourth Amendment." 1994 WL 389204, at * 2. Presumably, the panel considered, and correctly rejected, Stack's contention that the participation of private individuals, Killian and Duncan, violated the Fourth Amendment. See Bills I, 958 F.2d at 706 ("Police may constitutionally call upon private citizens to assist them, and where assistance is rendered in aid of a warrant, and not for some other purpose, the bounds of reasonableness have not been overstepped.")
 Incidentally, Stack labels this news media violation as a Fourteenth Amendment "right to privacy" infringement. This court rejects Stack's allegations that such a general privacy violation under the Fourteenth Amendment is an established right that overcomes qualified immunity under these circumstances. See Holman v. Central Ark. Broadcasting Co., Inc., 610 F.2d 542, 544 (8th Cir.1979) ("[N]o right to privacy is invaded when state officials allow or facilitate publication of an official act such as an arrest."); cf. Avenson v. Zegart, 577 F.Supp. 958, 962 (D.Minn.1984) (deciding that the failure of the police officers to remove media representatives did not violate the plaintiff's Fourteenth Amendment rights). Thus, this court will focus on a Fourth Amendment analysis of the media's connection to the search.