Jason Matthew FOX, Plaintiff,

v.

Cris J. VAN OOSTERUM, Laude Hartrum, Larry Stewart, in his official capacity as the Mason County Sheriff, County of Mason, a municipal corporation,

and

John R. Bulger, Defendants.

No. 1:96 CV 997.

United States District Court,
W.D. Michigan,
Southern Division.

Nov. 26, 1997.

**600**

James Nicholas Bostic, Springstead Bostic, PC, Hart, MI, for Jason Matthew Fox, plaintiff.

Robert K. Kaufman, Catherine D. Jasinski, Robert P. Tremp, PC, Traverse City, MI, for Cris J. Van Oosterum, Laude Hartrum, Larry Stewart, in his official capacity as the Mason County Sheriff, the County of Mason, a Municipal Corporation, John R. Bulger, defendants.

## OPINION

ENSLEN, Chief Judge.

This matter is before the Court on defendants' motion for judgment on the pleadings or, in the alternative, for summary judgment pursuant to Federal Rules of Civil Procedure 12(c) and 56(c). On December 19, 1996, plaintiff Jason Fox filed this action pursuant to 42 United States Code section 1983, alleging that defendants violated his Fourth, Sixth, and Fourteenth Amendment rights, and several state tort laws, by withholding his driver's license without cause, and by prosecuting and incarcerating him for several probation violations. Upon review, the Court grants defendants' motion and dismisses plaintiff's complaint in its entirety.

## A. LEGAL STANDARDS

### 1. Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that: "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings ." Such a motion may be based on defendants' assertion that plaintiff has failed to state a claim upon which relief may be granted. Fed. R. Civ. Pro. 12(h). Where that defense is raised, the Court of Appeals for the Sixth Circuit has held that a 12(c) motion should be evaluated under the same standards applied to a 12(b)(6) motion. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir.1987).

Under Rule 12(b)(6), a complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. However, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Morgan,* 829 F.2d at 12 (citations omitted).

"If on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the [C]ourt, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. Pro. 12(c).

### 2. Rule 56(c)

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A mo-

tion for summary judgment requires that the Court view the "'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.'" *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a *'genuine issue for trial.'"* *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. "The mere existence of a scintilla of evidence in support of plaintiff's position[, however,] will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## B. BACKGROUND

Plaintiff Fox's claims stem from events transpiring between August 1993 and August 1994. In August 1993, defendant Laude Hartrum, a detective with the Mason County Sheriff's Department, began investigating several recent car thefts. Having received a tip that Mike Thompson and plaintiff James Fox were involved in the crimes, defendant Hartrum arrested Thompson and impounded his truck. During a routine inventory search of Thompson's truck, plaintiff's wallet and driver's license were seized.

During the ensuing days, sufficient evidence was collected to arrest plaintiff Fox as well. Plaintiff was then charged with two counts of Breaking and Entering a Motor Vehicle and released on condition that he not drive. On August 26, 1993, however, defendant Hartrum observed plaintiff driving. As a result, plaintiff was arrested, his bond was revoked, and he was incarcerated pending the outcome of the case. On December 1, 1993, plaintiff pled guilty to the charges filed against him in August and signed an Order of Probation, acknowledging that he understood he had been sentenced to "serve 1 year in the Mason County Jail with 71 days credit given for time previously served [and that he was] to serve 6 months as follows: 90 days in jail and 90 days on Community Corrections tether and/or community service. Remainder of jail time reserved to be served at the Court's discretion."

After he was released, Fox immediately sold one of his cars so that he could pay several outstanding tickets which had caused his license to be suspended. Once he had done so, plaintiff returned to the Sheriff's office to collect his belongings. On January 5, 1994, plaintiff Fox asked defendant Hartrum to return his wallet and its contents. After consulting with defendant Prosecuting Attorney Van Oosterum, defendant Hartrum returned plaintiff's wallet but refused to release his driver's license, saying that plaintiff still had outstanding tickets. While defendant Hartrum was correct that plaintiff had two outstanding civil infraction tickets for making excessive noise, those tickets had no impact on defendant's driving privileges which had, in fact, been restored on December 22, 1993.

Plaintiff made several trips to the prosecutor's office in an attempt to retrieve his driver's license. Each time, however, the officers refused to return his license. Finally, on January 26, 1994, plaintiff confronted defendant Van Oosterum face to face and demanded the return of his license. Defendant stated that he would give plaintiff a copy of the license, but would not return the license until plaintiff paid his tickets. Plaintiff ultimately got a duplicate license from the Secretary of State on June 7, 1994.

A few months after plaintiff's release in December 1993, plaintiff was once again implicated in a car theft. On February 21, 1994, an acquaintance of plaintiff's reported that he had stolen her father's truck. Within the following days, plaintiff was arrested once again and placed in jail. On this occasion, defendants informed plaintiff only that he had violated the conditions of his probation and that he had been sentenced to 30 days of "discretionary time." No probation violation hearing was held nor was any notice given to plaintiff of the charges against him. Plaintiff was released on March 22, 1994.

On April 7, 1994, plaintiff was arrested and arraigned on a warrant pertaining to the incident reported on February 21, 1994.

Plaintiff posted bond on April 12, 1994, and was released. That same day, plaintiff was again arrested and incarcerated. Plaintiff was later informed that he had again violated the conditions of his release and that he had been sentenced to another period of "discretionary time," this time for 60 days. As before, defendant was not provided with notice of the charges against him, counsel for his defense, opportunity to be heard, to post bond or to appeal. Plaintiff was released on May 31, 1994.

On August 4, 1994, plaintiff was again arrested and jailed for an additional sentence of 30 days "discretionary time." Once again, plaintiff was denied notice, opportunity to be heard, and counsel before he was incarcerated. Finally, in March of 1995, a probation revocation proceeding was held, during which plaintiff pled guilty to the violations and was sentenced.

On December 19, 1996, plaintiff filed the instant lawsuit, alleging that defendants violated: 1) his rights to due process and to be free from unreasonable seizures by withholding his license without authority on January 5, 1994 (Count I); 2) his rights to counsel and due process on several occasions by causing the Court to jail him on "discretionary time" without notice of the charges, counsel, an opportunity to be heard, to post bond or appeal his sentence (Counts IV and V); and 3) state tort laws prohibiting unlawful conversion, intentional infliction of emotional distress, and abuse of state process (Counts II, III, and VI). Defendants are the Mason County Deputy Sheriff Laude Hartrum; Prosecuting Attorney Cris J. Van Oosterum; Assistant Prosecuting Attorney John C. Bulger; Sheriff Larry Stewart; and the County of Mason itself.

## C. ANALYSIS

### 1. Municipal Liability: Defendants County of Mason and Sheriff Stewart

■ Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2, 104

S.Ct. 2924, 2927 n. 2, 82 L.Ed.2d 36 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir. 1996). "[M]unicipalities and other local governmental bodies are 'persons' within the meaning of § 1983" and thus may be held liable under this section. *Board of County Comm'rs v. Brown*, —— U.S. ——, ———— ——, 117 S.Ct. 1382, 1387–88, 137 L.Ed.2d 626 (1997) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 689, 98 S.Ct. 2018, 2034, 56 L.Ed.2d 611 (1978)). A municipality may not, however, be held liable on a theory of *respondeat superior*. *Brown*, —— U.S. at ——, 117 S.Ct. at 1388. To hold such an entity liable under this section, a plaintiff must identify some municipal policy or custom that caused their injury. *Id.* It is not enough to merely identify conduct properly attributable to the municipality; *id.* "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id.*

■ Despite this causation requirement, a plaintiff may allege liability "where ... the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so[.]" *Id.* at ——, 117 S.Ct. at 1389. Under such circumstances, however, "rigorous standards must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* Indeed,

> a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.

*Id.* at ——, 117 S.Ct. at 1390; *Stemler v. City of Florence*, 126 F.3d 856, 867 (6th Cir.1997). Thus, where a plaintiff alleges that municipal action is the indirect cause of their injury, a plaintiff must plead and prove a policy or custom of action or inaction which justifies the inference of causation and culpability needed to hold the municipality liable under § 1983. *See id.*

■ Under certain circumstances, a municipality's failure to properly train its em-

ployees may satisfy that standard. *Brown,* —— U.S. at ——, 117 S.Ct. at 1390; *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In *Canton,* plaintiff alleged that the municipality's failure to adequately train its police officers resulted in a violation of her right to receive medical attention while in custody. *Id.* at 381, 109 S.Ct. at 1200. In remanding her case for further consideration, the Supreme Court stated that "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is *so obvious,* and the inadequacy so likely to result in the violation of constitutional rights that the policymakers of the city can be said to have been deliberately indifferent." *Id.* at 390, 109 S.Ct. at 1205 (emphasis added).

■ Reviewing *Canton,* the Supreme Court this year in *Board of County Commissioners v. Brown,* —— U.S. ——, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), reiterated the limited circumstances under which the failure to train will trigger municipal liability. *Id.* at ——, 117 S.Ct. at 1390. There, the Court noted that,

> [i]f a program does not prevent constitutional violations, municipal decisionmakers may *eventually* be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of the action—"the deliberate indifference"—necessary to trigger municipal liability.

*Id.* (emphasis added). Thus, to state a claim of municipal liability under § 1983 based on a failure to adequately train, a plaintiff must allege a set of facts which demonstrate that, prior to the occurrence of the injury, the municipality was put on notice of the likelihood of injury. *See id.*

■ This inference of notice or prior knowledge does not necessarily demand proof of more than a single deprivation. "[E]vidence of a single violation of federal rights accompanied by a showing that a municipality has failed to train its employees to handle *recurring situations* preventing an

obvious potential for such a violation, could trigger municipal liability." *Id.* at ——, 117 S.Ct. at 1391 (emphasis added). This is a stringent standard, however. A municipal official must act with disregard to a known or obvious consequence of his actions. *Id.*

In the instant case, plaintiff alleges two bases for municipal liability: 1) the municipality's failure to properly train, discipline, and supervise its employees (both with regard to the injuries resulting from retention of his driver's license and with regard to his incarceration for "discretionary time") and 2) Sheriff Stewart's failure to investigate and correct the constitutional violation after it had been brought to his attention. Because the claims involving plaintiff's incarceration for "discretionary time" are not cognizable under § 1983 as discussed below, the Court need not address the municipality's potential liability with regard to those claims. As for the allegations involving the retention of plaintiff's driver's license, the Court finds that plaintiff's assertion of municipal liability based on a failure to train does not withstand a cursory review.

■ As noted above, plaintiff's allegations of inadequate training will not trigger § 1983 liability, unless the situation causing the injury is recurring such that the Court may impute prior knowledge and deliberate indifference to the municipality. In the instant case, plaintiff has not suggested that this set of circumstances has ever arisen before, let alone occurred with frequency. Indeed, it appears that this was a unique situation. As a singular event, retention of plaintiff's wallet does not demonstrate an obvious need for more or different training. Furthermore, plaintiff's assertion that, in addition to failing to train its employees, the municipality also failed to discipline and supervise its employees, similarly fails to provide the Court with reason to believe that the municipality was on notice that such a deprivation was likely to occur. *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1246 (6th Cir.1989) (noting supervisor's liability cannot be grounded solely upon his right to control employees). Without some alternative theory upon which to base a finding of deliberate indifference, the Court must find that plain-

tiff's allegations do not trigger municipal liability. The Court will, therefore, dismiss all claims against the defendant Mason County and defendant Stewart based on the failure to train, discipline or supervise their employees.

Plaintiff also alleges that defendant Stewart's decision not to investigate the violation after he had been alerted to the transgression triggers municipal liability. Because Sheriff Stewart is a county policymaker, plaintiff argues, his single decision constitutes culpable municipal action under *Pembaur v. City of Cincinnati*, 475 U.S. 469, 471, 106 S.Ct. 1292, 1292, 89 L.Ed.2d 452 (1986). Plaintiff's theory, however, fails once again to demonstrate the causation necessary to find this injury fairly attributable to the municipality. Here, plaintiff argues, in effect, that the Sheriff's decision, made after the violation took place, somehow caused the violation to occur. Plaintiff's assertion defies logic. Consequently, his claims against defendant Stewart and the County based on this premise will be dismissed as well.

### 2. Qualified Immunity: Defendants Hartrum, Van Oosterum, and Bulger

Turning to the remaining individual defendants, the Court begins by noting that state officials, whether acting in the individual or official capacities, are persons for § 1983 purposes.[1] When performing discretionary functions, however, state officials may be entitled to qualified immunity from individual liability for damages. *Sanderfer v. Nichols*, 62 F.3d 151, 153 (6th Cir.1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Qualified immunity serves to protect state officials from " 'undue interference with their duties and from potentially disabling threats of liability.' " *Elder v. Holloway*, 510 U.S. 510, 516, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994) (quoting *Harlow*, 457 U.S. at 806, 102 S.Ct. at 2731). Whether a defendant is entitled to this immunity from suit is a question of law to be decided at the earliest possible stage of the proceeding. *See*

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Under the doctrine of qualified immunity, state officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Thomas v. Whalen*, 51 F.3d 1285, 1289 (6th Cir.1995). This standard is one of great deference, providing " 'ample room for mistaken judgments by protecting all but the plainly incompetent and those who knowingly violate the law.' " *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (per curiam) (internal citations omitted)). As a result, "[t]he contours of the right [allegedly violated] must be sufficiently clear [such] that a reasonable official would understand that what he was doing violate[d] that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. The qualified immunity analysis is, thus, a two-part inquiry: first, the Court must determine whether, based on the applicable law at the time of the alleged injury, a genuine issue of fact has been raised as to the existence of a constitutional violation, and second, whether the defendant officials should have known their actions were in violation of that constitutional right. *See Dickerson*, 101 F.3d at 1157–58. The Court, therefore, turns to the merits of plaintiff's constitutional claims. Because plaintiff's claims involving the withholding of his licenses are logically distinct from his claims relating to prosecutorial misconduct, the Court will review each set of claims in turn.

### a. Count I: Withholding of Driver's license

#### i. Procedural Due Process

Count I of plaintiff's complaint alleges that defendant Hartrum and Van Oosterum's retention of plaintiff's driver's license after January 5, 1994, constituted a deprivation of his property without due process of

---

**1.** The Court notes that defendants neglected to raise Eleventh Amendment immunity in their motion. Consequently, the Court will not address that defense.

law as required by the Fourteenth Amendment. The Fourteenth Amendment guarantees that in all cases where an individual stands to be deprived of life, liberty or property by the government, he is entitled to due process of law. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (citing *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974)). Referred to as procedural due process, the Supreme Court has generally held that this aspect of the Fourteenth Amendment requires the State to provide individuals with notice and an opportunity to be heard before the State effects such a deprivation. *United States v. James Daniel Good Real Property,* 510 U.S. 43, 51, 114 S.Ct. 492, 499, 126 L.Ed.2d 490 (1993); *Parratt v. Taylor,* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The Court has noted, however, that there are circumstances under which such predeprivation process is either impracticable or impossible. *Parratt,* 451 U.S. at 539, 101 S.Ct. at 1914. Where the situation demands quick action or where state officials act randomly and without authorization, the Court has held that adequate postdeprivation remedies are sufficient to satisfy this constitutional requirement. *Id.* at 541, 101 S.Ct. at 1916. Where, however, state officials act in accordance with an established state custom or policy, their acts are not "random and unauthorized" and predeprivation process is required. *Id.*

To determine whether plaintiff has stated a claim for relief under this doctrine, the Court must first ascertain whether plaintiff was deprived of a protected interest and then decide whether the process provided was sufficient. In the instant case, plaintiff clearly alleges that he was deprived of his proprietary interest in his driver's license when the defendants withheld it.[2] Consequently, the main question is whether plaintiff received whatever process he was due. As noted above, this decision turns on the nature of the deprivation and whether his remedies were adequate.

Plaintiff contends that, despite the fact that the state officials' actions in withholding plaintiff's license were taken without legal authority, he was nevertheless entitled to predeprivation process. Arguing that the deprivation was caused by a state custom or policy of failing to train, discipline and supervise its employees, plaintiff asserts that defendants' actions may not be considered random and unauthorized. This, he claims, means that under *Parratt* he is entitled to predeprivation process.

While plaintiff's basic premise is correct—that actions taken in accordance with a state custom or policy are not unauthorized—his procedural due process claim fails because he has not articulated such a policy. As previously discussed, plaintiff has failed to provide the Court with facts demonstrating a need for more or different training. Because the policymakers could not have anticipated the random act of a state employee in this isolated set of circumstances, predeprivation process was impossible. *See Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916. Thus, defendants Hartrum and Van Oosterum's actions, even if intentional, are considered random and unauthorized for the purpose of this inquiry and plaintiff's claim will fail unless he pleads and proves that the state remedies available to him were inadequate. *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (citing *Hudson v. Palmer,* 468 U.S. 517, 531–33, 104 S.Ct. 3194, 3202–03, 82 L.Ed.2d 393 (1984) and *Parratt,* 451 U.S. at 543–44, 101 S.Ct. at 1916–17).

Plaintiff asserts that his state remedies were not adequate because they were not available to him.[3] Plaintiff argues that his

---

**2.** The Court notes that plaintiff's claim is based solely on the fact that defendants withheld the physical card from him, not on any claim that his driving privileges were suspended. Thus, this case does not implicate plaintiff's liberty interest in his driving privileges, *see Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971),

but rather only the possessory interest he had in the license itself.

**3.** The Court notes that, since plaintiff has not affirmatively plead that his state remedies were inadequate, his claim is technically barred. *Copeland,* 57 F.3d at 478. The Court will, nevertheless, proceed with the analysis of the argu-

insufficient education, lack of knowledge of the law, indigency and incarceration, rendered the existing postdeprivation remedies inaccessible to him and thus inadequate. The irony of this assertion is that plaintiff has somehow managed to assert one of those civil remedies in the instant case, demonstrating that at least that remedy was not so inaccessible to him. In addition to the Claim and Delivery procedure set out in Michigan Court Rule 3.105, the tort of conversion, MCLA 600.6419, alleged in Count II, provides plaintiff with a mechanism to sue the State and defendants for damages. While plaintiff neglects to explicitly discuss the inadequacy of those remedies, he does seem to imply that civil tort remedies are *per se* inadequate. Courts have, however, regularly held tort remedies constitutionally adequate to satisfy the demands of the Due Process Clause. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Hudson v. Palmer*, 468 U.S. 517, 531–33, 104 S.Ct. 3194, 3202–03, 82 L.Ed.2d 393 (1984); *Braley v. City of Pontiac*, 906 F.2d 220, 225 (6th Cir. 1990); *Wagner v. Higgins*, 754 F.2d 186, 191–92 (6th Cir.1985). Having failed to meet his burden to plead and prove the inadequacy of these state procedures, the Court holds that plaintiff has failed to state a claim for deprivation of procedural due process.

The Court notes that plaintiff has stated that he "stands ready" to provide the Court with more detailed or more specific allegations of the absence of an adequate remedy. Having had sufficient opportunity in which to amend his complaint or at the very least argue such a claim in his brief on this motion for judgment, the Court finds that plaintiff's opportunity to plead such matters has passed, finds the instant pleadings insufficient, and dismisses this claim with prejudice.

### ii. Fourth Amendment

Despite the Court's finding that plaintiff has failed to state a claim for procedural due process, Count I of plaintiff's complaint has continued vitality. Pled as a hybrid claim, Count I alleges violations of both Fourth and Fourteenth Amendment protections. Noting that both Amendments provide explicit protections against governmental deprivations, plaintiff asserts that the retention of his license on January 5, 1994, constituted an unreasonable seizure of his property and thus a separate violation of the Fourth Amendment, as well as a deprivation under the Due Process Clause. Whether the facts stated can support claims under both Amendments simultaneously, however, is not altogether clear and must be determined before the Court may proceed.

 Generally, the applicability of one constitutional amendment to a set of facts will not preclude the application of another amendment to the same course of conduct. However, where a plaintiff's complaint involves a deprivation of property falling under *Parratt*, some courts have held that no other claims may be stated under § 1983. Because "the commonsense teaching of *Parratt* is that some questions of property, contract, and tort law are best resolved by state legal systems without resort to the federal courts," *Albright v. Oliver*, 510 U.S. 266, 315, 114 S.Ct. 807, 834, 127 L.Ed.2d 114 (1994) (Kennedy, J., concurring), courts have questioned whether other substantive claims may coexist with a procedural due process claim for deprivation of property. The reasoning behind such decisions being that, where a plaintiff is able to state § 1983 claims under both, for instance, the Fourth and Fourteenth Amendments, *Parratt*'s effort to return the matter to the state court will be thwarted. Consequently, some courts have declined to apply the Fourth Amendment to cases they perceive as properly addressed under *Parratt*.

Several of the courts espousing this view have been from this Circuit. *See, e.g., Wagner v. Higgins*, 754 F.2d 186 (6th Cir.1985). In *Wagner*, the Court of Appeals for the Sixth Circuit confronted a situation similar to the one presented here. There, plaintiff brought a § 1983 action alleging that police officers who lost the property recovered from his automobile during an inventory search had violated both the Fourth and Fourteenth Amendments. *Id.* at 187. Dividing plaintiff's claims temporally, the majority of the Court construed his Fourth Amendment

---

ments advanced in his brief in opposition to defendants' motion.

claim as pertaining only to the initial seizure and then addressed the subsequent loss and resulting permanent deprivation of his property under the *Parratt* analysis. *Id.* at 190. Judge Contie, however, noted that the plaintiff specifically alleged that another Fourth Amendment event occurred at police headquarters when his property was lost or stolen. *Id.* at 193. Reviewing this additional claim, Judge Contie noted that: "[t]he claim that the continued retention by state actors of personal property, as opposed to its temporary seizure for use as evidence, violates the [F]ourth [A]mendment is, indeed, novel." *Id.* at 194. Judge Contie then went on to analyze plaintiff's claim in light of Justice O'Connor's statement in *Hudson v. Palmer,* that: "if the act of taking possession and the indefinite retention of the property are themselves reasonable, the handling of the property while in the government's custody is not itself a Fourth Amendment concern." *Id.* Following this reasoning, Judge Contie found that: "the appropriate source of constitutional protection against such acts lies not in the [F]ourth [A]mendment[,]" but rather the Fourteenth Amendment right to procedural due process. *Id.*

Applying the same reasoning in *Miller v. Kunze,* No. 86–1776, 1988 WL 138916 (6th Cir. Dec. 28, 1988) (unpublished), the Sixth Circuit once again found that plaintiff could not state a Fourth Amendment claim for monetary damages when the *Parratt* analysis applied. In *Kunze,* the court stated explicitly that: "plaintiff's monetary loss occasioned by [] police officers' legitimate efforts to ensure public safety should be redressed through appropriate state tort and common-law remedies, or if these are inadequate, under the Fifth Amendment or the [D]ue [P]rocess [C]lause, rather than the Fourth Amendment." *Id.* at *5 (citing *Hudson,* 468 U.S. at 540, 104 S.Ct. 3194 (O'Connor, J., concurring)). *See also Boles v. Saginaw Police Dept.,* No. 85–1086, 1986 WL 16844 (6th Cir. Apr. 23, 1986) (unpublished) (stating that "[p]olice retention of property seized in an arrest and criminal investigation is not actionable under section 1983 if state remedies are available for return of the property."); *Pogue v. Allison,* 851 F.Supp. 1536, 1540 (D.Wyo.1994) (construing plaintiff's Fourth

Amendment claim as a procedural due process claim where plaintiff's driver's license was lost by police after her arrest).

■ Since the decisions in *Wagner* and *Kunze,* however, the Sixth Circuit has stated explicitly that this approach is invalid where plaintiff seeks compensation for property damaged by state officials. *Bonds v. Cox,* 20 F.3d 697, 702 (1994). Applying the Supreme Court's decision in *Soldal v. Cook County,* 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), the Sixth Circuit rejected *Kunze* in *Bonds v. Cox.* In *Soldal,* plaintiff alleged violations of both her Fourth and Fourteenth Amendment rights occurred when the police participated in the unlawful eviction of her mobile home, which resulted in extensive property damage. *Id.* at 59, 113 S.Ct. at 542. In construing plaintiff's claim as a single Fourteenth Amendment claim, the court below stated that courts should "look at the 'dominant character of the conduct challenged in a section 1983 case [to] determine the constitutional standard under which it is evaluated.'" *Id.* at 70, 113 S.Ct. at 548 (quoting 942 F.2d 1073, 1080 (7th Cir.1991) (en banc)). The Supreme Court, however, flatly rejected this approach, stating: "we see no basis for doling out constitutional protections in such a fashion." *Id.* "Where [] multiple violations are alleged, ... we examine each constitutional provision in turn." *Id.* Consequently, the *Bonds* court ruled that, where property damages are the result of a seizure by state officials, plaintiff may state a Fourth Amendment claim in addition to a procedural due process claim. 20 F.3d at 702. Thus, despite concerns with preserving the efficacy of *Parratt,* this Court must proceed with its Fourth Amendment analysis.

■ The Fourth Amendment provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. To state a claim under this Amendment, plaintiff must, therefore, allege: 1) that defendants actions constituted a search or seizure within the meaning of this Amendment; and 2) that their

actions were unreasonable in light of the surrounding circumstances. This Amendment protects property interests as well as expectations of privacy. *Soldal,* 506 U.S. at 62, 113 S.Ct. at 543 (quoting *United States v. Jacobsen,* 466 U.S. 109, 120, 104 S.Ct. 1652, 1660, 80 L.Ed.2d 85 (1984)).

Turning to the first prong of this test, the Court notes that plaintiff's Fourth Amendment claim is based on his broad reading of the term "seizure" to include the retention of property. Plaintiff has clearly stated that this claim does not stem from the initial seizure of his wallet which took place on August 17, 1993. Rather, he asserts that a second seizure took place on January 5, 1994, when defendants Hartrum and Van Oosterum together refused to return his driver's license to him. By withholding the license when he was legally entitled to it, plaintiff argues that defendants effectuated an unreasonable seizure of his property.

Looking initially to the plain meaning of the term, the Court notes that, as commonly defined, "seizure" does not encompass the concept of withholding property; rather, it is generally defined as the confiscation or taking of property as opposed to the retention of an item. AMERICAN HERITAGE DICTIONARY 1175 (1981); BLACK'S LAW DICTIONARY 1219 (5th ed.1979). The Supreme Court has long held, however, that a more expansive definition is appropriate in the Fourth Amendment context. For Fourth Amendment purposes, a " 'seizure' of property ... occurs when 'there is some meaningful interference with an individual's possessory interest in that property." ' *Soldal,* 506 U.S. at 61, 113 S.Ct. at 543 (quoting *Jacobsen,* 466 U.S. at 113, 104 S.Ct. at 1656). Applying this broader definition, courts have held that the wrongful retention of property may state a claim under the Fourth Amendment. *See, e.g., Bush v. Banks,* Nos. 95–6370, 96–5015, 1996 WL 668551 (6th Cir. Nov. 18, 1996) (holding plaintiff whose "property was retained by the county for an extensive period" had legally cognizable claims under both 4th and 14th Amendments) (unpublished); *Eaton v. Farmer,* No. 93–6305, 1994 WL 151336 (6th Cir. Apr. 26, 1994) (holding complaint alleging 4th and 14th Amendment violations based on the wrongful refusal to return property was not frivolous) (unpublished).

In light of this definition, plaintiff's claim may be articulated in one of two ways: either, as plaintiff asserts, there were two seizures: one, when the officers originally impounded the truck, and a second, when defendants refused to return plaintiff's license; or, the Court may view the State's ongoing dominion over plaintiff's property as one continuous seizure, which, although legal in its inception, may have become unreasonable at some point thereafter. Under either articulation, however, it is clear that the defendant state actors interfered with whatever property interests plaintiff may have had in his driver's license and, as a consequence, that defendants' actions constituted a seizure.

Having demonstrated that defendants' actions implicate the Fourth Amendment, the only question remaining is whether plaintiff has articulated sufficient facts to demonstrate a genuine issue on the question of reasonableness. In guiding courts making this determination, the Supreme Court has noted that there is temporal element to this analysis. *See Hudson v. Palmer,* 468 U.S. 517, 538, 104 S.Ct. 3194, 3206, 82 L.Ed.2d 393 (1984) (O'Connor, J., concurring) (citing *United States v. Place,* 462 U.S. 696, 709–710, 103 S.Ct. 2637, 2645–46, 77 L.Ed.2d 110 (1983) and *Jacobsen,* 466 U.S. at 124–25, 104 S.Ct. at 1662–63). Indeed, the Court has held that a seizure originally conducted lawfully can, nevertheless, become unlawful if the duration or manner of the seizure is deemed unreasonable in light of the competing interests. *Id.*

In the instant case, plaintiff contends that the government had no lawful reason for retaining his driver's license beyond January 5, 1994, and that, consequently, that retention was unreasonable. Plaintiff has alleged that, at the time they withheld his license, defendants Hartrum and Van Oosterum, had no need to hold plaintiff's license as evidence in a criminal investigation, nor did they have grounds to prevent him from driving with it, since his privileges had been reinstated. Furthermore, defendants concede that their actions were not authorized by law or policy.

As a result, the Court finds that plaintiff has articulated sufficient facts to raise a genuine issue as to whether the seizure in this case was reasonable.

 This, however, does not end the Court's inquiry. As noted above, defendants have asserted that they are entitled to qualified immunity. Consequently, the Court must determine whether plaintiff's rights were so clearly defined *at the time of the alleged offense* as to make obvious to any reasonable officer that his actions were in violation of the Fourth Amendment. Upon review of the Sixth Circuit case law, it becomes evident that such a Fourth Amendment right was not clearly established at the time of the alleged incident.

Looking once again to the cases mentioned above, the Court finds that, as of January 5, 1994, the case law did not clearly delineate the existence of a Fourth Amendment right in this context. On the contrary, as of January 5, 1994, the Sixth Circuit had indicated that claims of this type were properly brought as procedural due process claims, and not as Fourth Amendment claims. *See Miller v. Kunze,* No. 86–1776, 1988 WL 138916 (6th Cir. Dec. 28, 1988) (unpublished); *Wagner v. Higgins,* 754 F.2d 186 (6th Cir. 1985). Moreover, the opinion in *Bonds,* which explicitly overruled *Kunze,* was not issued until April 6, 1994, several months after plaintiff alleged the Fourth Amendment violation transpired. Thus, at the time of the alleged incident, the Sixth Circuit case law indicated police retention of personalty where the initial seizure was reasonable did not give rise to a Fourth Amendment claim. Consequently, defendants are entitled to qualified immunity and this claim will be dismissed.

### b. Counts IV & V: Arrests and Incarceration for "Discretionary Time"

 Plaintiff's remaining claims are based on his assertion that his arrests and incarcerations for "discretionary time" violated his due process and Sixth Amendment rights. Where plaintiff's claims for damages stem from an assertion that his arrest or conviction was unconstitutional, the Supreme Court's holding in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), is controlling:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id.* at 486–87, 114 S.Ct. at 2372–73; *Schilling v. White,* 58 F.3d 1081, 1085–86 (6th Cir. 1995) (stating *Heck* concluded proof that a conviction has been reversed is a necessary element of the § 1983 cause of action); *Shea v. Ohio,* No. 96–3458, 1997 WL 144228, *1 (6th Cir. Mar. 27, 1997) (holding *Heck* applicable in non-prisoner case). Since plaintiff's claims are based on his assertion that several of his arrests and convictions are unconstitutional because he was not provided with notice of the charges against him, counsel, an opportunity to be heard, to post bond, or to appeal, his claims regarding his incarceration for "discretionary time" are not cognizable under § 1983.

### c. Counts II, III, & VI: State tort claims

 Having dismissed plaintiff's federal claims, only plaintiff's state tort claims remain. Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction[.]" Indeed, " 'if the federal claims are dismissed before trial, . . . the state claims [generally] should be dismissed as well.' " *Taylor v. First of Am. Bank–Wayne,* 973 F.2d 1284, 1287 (6th Cir.1992) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). The Court, therefore, in its discretion, dismisses plaintiff's state claims.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted and plaintiff's federal claims are dismissed with prejudice. Declining to retain jurisdiction over the remaining claims, the Court will also dismiss plaintiff's state claims without prejudice.